IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHESTERFIELD CHAMBER OF COMMERCE, A Missouri Nonprofit corporation, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA CATANZARO, An individual, | ) ) | |
| | )) | |
| Defendant, | ) | |
| | ) | |
| and | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GATEWAY CREATIVE, INC., A Missouri corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Chesterfield Chamber of Commerce ("**Plaintiff**" or "**Chamber**") by and through its attorneys and for its Complaint against Defendants Patricia Catanzaro ("**Catanzaro**") and Gateway Creative, Inc. ("**Gateway**") (collectively, the "**Defendants**"), alleges and states:

## PARTIES

1.     Plaintiff Chamber is a nonprofit corporation duly organized and existing in good standing under the laws of the State of Missouri. Since 1976, the Chamber has promoted and supported the business community of Chesterfield, Missouri in St. Louis County by providing educational and networking opportunities to more than 650 commercial, industrial, retail and professional members.

2.      Defendant Catanzaro is an individual resident and citizen of the State of Missouri. Defendant Catanzaro is the President, Secretary and sole director of Gateway Creative, Inc.

3.      Defendant Gateway is a corporation duly organized and existing under the laws of the State of Missouri duly organized and existing in good standing under the laws of the State of Missouri.  Defendant may be served through its Registered Agent, who is located within this Judicial District:  Ms. Patricia Catanzaro, 1136 Washington Avenue, Unit 207, St. Louis, Missouri 63101.  Defendant Gateway is the former publisher of "Out & About"® magazine, which was published in cooperation with and at the direction of the Chamber.

## NATURE OF THIS ACTION

4.      This action seeks injunctive relief and damages against Defendants' willful infringement of Plaintiff's trademark in violation of the Lanham Trademark Act of 1986, as amended, Title 15, United States Code, §§ 1051, *et seq*, as well as state statutory law and state common law under the doctrines of unfair competition and trademark infringement.

5.      The Chamber is a non-profit chamber of commerce in St. Louis County and, in addition to all the other benefits it provides its members and the local community, it publishes and distributes a magazine entitled "Out & About"® to communicate with its members and residents and to achieve its educational, economic, business and public service goals.  The "Out & About"® magazine is distributed to Chamber members, the business community and citizens throughout Chesterfield and the surrounding area.  Additionally, the "Out & About"® magazine is available on-line.

6.      The Chamber engaged, as its agent, Defendant Gateway, whose president is Defendant Catanzaro, to develop, promote and publish the "Out & About"® magazine which included Defendants developing and placing advertisements in the magazine on behalf of Plaintiff

2

and for the benefit of Plaintiff.  Many of the advertisers were Chamber members whom Plaintiff provided access to for purposes of obtaining advertisements in the "Out & About"® magazine.

7.     By agreement, the Defendants were to publish "Out & About"® magazine through the end of 2014.

8.     Defendants, however, in about August 2014, notified the Chamber that despite Defendants' obligations to publish the "Out & About"® magazine through the end of 2014, Defendants would not honor its obligations.

9.     Instead, as set forth herein, Defendants absconded with advertisers meant for the "Out & About"® magazine and placed the advertisements in a new publication owned, controlled and published by Defendants called "Out 'n Around" magazine.

10.    The basis of this trademark infringement litigation was and is Defendants, immediately after Defendants wrongfully terminated the relationship with the Chamber publishing a magazine named "Out 'n Around" which Defendants promoted, marketed and directed to Chamber members, the business community and residents which contains many of the same advertisers which were obtained for and on behalf of Plaintiff for the "Out & About"® magazine.

11.    Defendants are using the infringing mark "Out 'n Around" on a magazine which is virtually identical to "Out & About"® and Defendants have done so deliberately in the knowledge and expectation that they are competing directly with the Chamber.

12.    The Chamber has not consented to or authorized Defendants' use of the "Out 'n Around" infringing mark; nor has the Chamber sponsored, endorsed or approved same.

13.    The conduct of Defendants is causing actual and likely confusion among consumers and advertisers while eroding the distinctiveness of the Chamber's trademark, is all in violation of Federal, State and common law.

3

**JURISDICTION AND VENUE**

14.     The claims alleged in this Complaint are based upon the trademark laws of the United States, 15 U.S.C. § 1501, *et seq*. (the "Lanham Act"), the State of Missouri, §417.061, R.S.Mo., and the common law, and comprise an actual and substantial controversy concerning Defendants' infringement and dilution of the Chamber's trademark and Defendants' unfair competition.

15.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) & (b).  This Court has supplemental or related claim jurisdiction over the state statutory law and common law claims alleged herein pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. §1367 in that the federal and state law claims alleged herein are based upon the same operative facts.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) in that all parties are residents of the State of Missouri and this judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

**THE CHAMBER'S "OUT & ABOUT"® TRADEMARK**

17.     From August 1, 1996 through the end of 2014, the Chamber engaged Defendant Gateway to publish and disseminate the "Out & About"® magazine.  Since that time, the Chamber has continuously used and owned exclusively the trademark "Out & About"®.

18.     Defendants expressly recognized that the Plaintiff was the owner of and had all rights in the "Out & About"® trademark.

19.     On behalf of and for the exclusive use of Plaintiff's "Out & About"® magazine, advertisers were obtained and placed advertisements in the "Out & About"® magazine, providing revenue for the Chamber.

4

20.     The Chamber has editorial control of, input into and approval rights for the content for every issue of "Out & About"® magazine.  The Chamber has provided original content for certain sections of "Out & About"® magazine and has used its position in the community to obtain advertisers and other content providers for the issues of the magazine.

21.     "Out & About"® magazine has been widely read by and has been known to members of the business community in Chesterfield and St. Louis County for many years. The Chamber also provides access to an online version of the "Out & About"® magazine on its website, which is available for viewing by all visitors to their website.

22.     The Chamber has devoted significant effort in financing and promoting the "Out & About"® magazine and the mark, "Out & About"®.

23.      The "Out & About"® mark was first used and first used in interstate commerce by the Chamber on or about August 1, 1996.

24.     On February 24, 1997, the Chamber filed an application with the U.S. Patent and Trademark Office (the "PTO") to register the "Out & About"® mark.

25.     On October 27, 1998 the PTO granted a federal trademark registration to the "Out & About"® mark. The PTO subsequently issued to the Chamber a Certificate of Registration, U.S. Registration No. 2,200,451 for the "Out & About"® trademark (the "Mark").  Attached hereto as **EXHIBIT A** is a true and correct copy of the Certificate of Registration.

26.     The Chamber is the first and only user of the Mark.

27.     The Mark is valid and substantial, is in full force and effect, and has become incontestable by virtue of the PTO's acceptance of a Declaration of Incontestability therefor under Section 15 of the Trademark Act (15 U.S.C. §1065), accepted by the PTO January 23, 2004.

28.     The PTO granted renewal of the Mark's registration on January 19, 2008.

29.     Thus, the Mark, all associated goodwill, and the right to sue for past and current infringement thereof was acquired by the Chamber as early as August 1, 1996.

30.     The Chamber is the owner of all right, title, interest, and goodwill in and to the Mark, including all statutory and common law rights therein.

31.     As a result of the Chamber's longstanding use of the Mark in commerce in connection with its extensive and continuous online, downloadable, and print versions of the "Out & About"® magazine in its advertising and promotion of the local business community and local events, the Mark has achieved widespread and favorable public acceptance and recognition.

32.     The "Out & About"® magazine and the Mark have received recognition from the Chamber's members, other local and county-wide members of the business community, and individual readers of the magazine as a provider of reliable and current information and news regarding the Chamber's commercial, industrial, retail and professional members and current information as to upcoming events in the Chesterfield and St. Louis County area.  Additionally, the Chamber depends on the "Out & About"® magazine to effectively communicate with its members and the public at large about its positions on certain economic and business matters in the greater Chesterfield area.

33.     The Mark has thus become an extremely valuable symbol of the Chamber's goodwill and reputation.

34.     As a result of the foregoing, the Mark has become an asset of incalculable value to the Chamber as a symbol designating the Chamber as the source of information for Chesterfield businesses and all other significant events in the Chesterfield community.

## GATEWAY CREATIVE INC.'S WRONGFUL CONDUCT AND INFRINGEMENT

35.     Defendants, as agents of the Chamber and at the sole and exclusive direction of the Chamber, published the "Out & About"® magazine using the Mark, with the permission of the Chamber.

36.     Defendants notified the Chamber that Defendants refused to publish the final 2014 issues of "Out & About"® magazine.  As a result, Defendants had and have no right to use the Mark or any form thereof in any way.

37.     Defendants were the agents for the Chamber and cannot use the Mark or appropriate the Mark or any form thereof for their own sake.

38.     Therefore, ownership of the Mark and all rights thereto reside solely with the Chamber.

39.     After Defendants wrongfully refused to publish the remaining 2014 issues of the "Out & About"® magazine, Defendants secretly created, published and disseminated a magazine called "Out 'n Around," taking advertisers that were to be included in the remaining 2014 issues of the "Out & About"® magazine and placing the advertisements in the "Out 'n Around" magazine (the "Infringing Publication) using the mark "Out 'n Around" (the "Infringing Mark").

40.     Further, Defendant Gateway, through and by the actions and at the direction of its principal and publisher, Defendant Catanzaro, operated two websites, https://www.facebook.com/pages/Out-n-Around-Mag/112572055490555 as well as http://www.gatewaycreative.net/ and which is available for download from the websites and distributed around Chesterfield, Missouri and St. Louis County.   Both websites contain the Infringing Publication and the Infringing Marks.

41.     On its websites, Defendants continue to falsely proclaim that they publish and distribute the "Out & About"® magazine and, further, Defendants on the websites comingle copies

of the "Out & About"® magazine, the Mark with Defendants' Infringing Publication and Defendants' Infringing Mark.

42.     The format, presentation and markets sought by and actually used by Defendants for the Infringing Publication and the Infringing Mark are substantially similar or, in many cases, identical to that of the "Out & About"® magazine using the Mark.

43.     Defendants' promotion, advertising sales and distribution of the Infringing Publication and use of the Infringing Mark are directed to consumers and advertisers of Plaintiff and are conducted through the same channels of interstate commerce and trade as are used by Plaintiff in its use of the Mark.

44.     Defendants' promotion, advertising sales and distribution of the Infringing Publication and use of the Infringing Mark rely on, upon information and belief, the mailing list and Chamber member list which the Chamber provided to Defendants for the sole purpose of promoting, publishing and distributing the "Out & About"® magazine.

45.     The Chamber has not consented to and has not authorized Defendants' use of the Infringing Mark; nor has the Chamber sponsored, endorsed, or approved the services offered and promoted by Defendants and/or the Infringing Publication.

46.     Defendants are also profiting from the Infringing Publication and use of the Infringing Mark and associated websites by using the infringing web content and domain name to generate income based on the number of visits to the website by consumers, Chamber members, and professionals seeking to reach the Chamber, its advertisers or the "Out & About"® magazine.

47.     Defendants, with constructive and actual knowledge of the Chamber's exclusive ownership and use of the Mark, and the valuable goodwill developed therein, and without the

Chamber's permission, created, published, distributed and maintained the Infringing Publication and used the Infringing Mark along with associated websites.

48.     Defendants also absconded with, misdirected and/or misused advertisements that were intended for the "Out & About"® magazine in the Infringing Publication.

49.     After learning of Defendants' use of the Infringing Mark and distribution of the Infringing Publication and the associated websites, the Chamber, by and through its counsel, sent a letter to Defendants notifying Defendants that its use of the Infringing Mark and publication and distribution of the Infringing Publication infringed Plaintiff's trademark rights in the Mark. Plaintiff demanded that Defendants immediately cease and desist all use of the Infringing Mark and publication and distribution of the Infringing Publication.  Attached hereto as **EXHIBIT B** is a true and correct copy of the September 5, 2014 letter to Defendants.

50.     Defendants have nevertheless failed to cease and desist in using the Infringing Mark and the publication and distribution of the Infringing Publication and use of the associated websites bearing the infringing content and domain name.

51.     Defendants' infringing conduct continues to this day.

52.     Defendants' refusal to cease and desist their infringement of the Mark confirms Plaintiff's belief that Defendants willfully selected and are using the Infringing Mark and publishing and distributing the Infringing Publication and using the associated websites to mislead and confuse consumers, advertising and the public into believing that Defendants' services and publications are provided, sponsored, or approved by Plaintiff.

53.     Defendants are publishing the Infringing Publication, using the Infringing Mark and maintaining the associated websites so as to trade on Plaintiff's reputation and good will and its enormous investment in and promotion of its Mark.

54.     Trademark infringements, such as in the within case, without more, are presumed to cause irreparable harm to the owner of the infringed mark and, in fact, Defendants' actions have caused irreparable and immediate harm to Plaintiff.

55.     Defendants' aforementioned unlawful use of the Infringing Mark and the publication and distribution of the Infringing Publication are likely to cause confusion, deception and/or mistake as to:  (a) the source or origin of the Infringing Publication; (b) whether Plaintiff sponsors, endorses, or approves Defendants or its services and the Infringing Publication or are otherwise affiliated with Plaintiff.  Alternatively, Defendants' use of the Infringing Mark and the publication and distribution of the Infringing Publication and the associated websites have caused and is likely cause further actual confusion among consumers, advertisers and others who believe, contrary to the fact, that Defendants' Infringing Publication and associated websites are provided by, published by, distributed by, or otherwise emanate from, or otherwise sponsored, approved, authorized or licensed by Plaintiff.

## COUNT I
### (Trademark Infringement, Unfair Competition; 15 U.S.C. § 1125(a))

56.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 55 of this Complaint.

57.     Defendants took the actions described herein with the knowledge that they would, and with the intent to, cause confusion, mistake or deception.

58.     Defendants' use of the Infringing Mark and publication and distribution of the Infringing Publication as alleged herein constitutes an infringement of Plaintiff's federally registered Mark in violation of the Trademark Act of 1946, as amended (15 U.S.C. § 114(1)).  15 U.S.C. § 1125(a).

59.     Defendants' chose the Infringing Mark and took the actions herein described, to cause confusion or mistake, to deceive the public as to the origin, sponsorship, or approval of the services and the Infringing Publication and associated websites of Defendants, and/or to deliberately pass off Defendants' Infringing Publication, associated websites and services as those of Plaintiff.

60.     Defendants' acts as alleged herein constitute, among other things, false designations of origin, false and/or misleading descriptions of fact, and/or false or misleading representations of fact which are likely to cause and have actually caused confusion or mistake, or to deceive the public as to the origin, sponsorship, or approval of the services and the Infringing Publication and websites of Defendants.

61.     As a direct, foreseeable and proximate result of the Defendants' infringing conduct, Plaintiff has suffered and will continue to suffer irreparable injury to its business reputation and goodwill for which no adequate remedy exists at law, and Plaintiff has lost sales and profits and will lose sales and profits, causing monetary damage, loss and injury to the Chamber in an amount to be determined at the time of trial and not yet fully ascertained.

62.     Defendants' conduct complained of herein is malicious, fraudulent, knowing, willful and deliberate, entitling Plaintiff to an accounting of Defendants' profits, treble damages in an amount to be determined at trial, and an award of attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §1117.

63.     Unless enjoined, Defendants will continue and have advised that they will continue their infringing conduct.

64.     The aforesaid acts of infringement by Defendants, unless enjoined by this Court, will cause irreparable damage, loss and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT II**
**(False Designation of Origin and False Representation; 15 U.S.C. §1125(a))**

65.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 64 of this Complaint.

66.     Defendants' actions as alleged herein constitute the use by Defendants of a false designation of origin and a false representation in commerce in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and Defendants are engaging in this activity with knowledge of the falsity of such designation of origin and representation.

67.     The aforesaid acts of false designation of origin and false representation by Defendants have caused monetary damage, loss and injury to Plaintiff in an amount to be determined at the time of trial and not yet fully ascertained.

68.     Defendants' conduct complained of herein is malicious, fraudulent, knowing, willful and deliberate, entitling Plaintiffs to an accounting of Defendants' profits, treble damages in an amount to be determined at trial, and an award of attorneys' fees and costs incurred in prosecuting this action under 15 U.S.C. §1117.

69.     The aforesaid acts of infringement by Defendants, unless enjoined by this Court, will cause irreparable damage, loss and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

<u>**COUNT III**</u>
*(Common Law Trademark Infringement, Unfair Competition and Misappropriation)*

70.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 69 of this Complaint.

71.    Defendants' aforesaid unlawful use of the Infringing Mark and publication and distribution of the Infringing Publication and associated websites in interstate commerce and in this Judicial District in connection therewith, constitute a false designation of the origin, a false and/or misleading description of fact, and/or a false and misleading representation of fact which constitutes unfair competition and an infringement of the Plaintiff's Mark and is likely to cause and has caused confusion and mistake and/or deception as to the affiliation, connection, or association of Defendants with Plaintiff and/or as to the origin, sponsorship, or approval of Defendants' Infringing Mark, Infringing Publication and associated websites by Plaintiff.

72.    Defendants have acted willfully, so as to justify the assessment of punitive damages against Defendants, jointly and severally, in an amount to be determined at the time of trial and not yet fully ascertained, but believed to be not less than $150,000.00.

73.    The aforesaid acts of trademark infringement, unfair competition and misappropriation by Defendants, unless enjoined by this Court will cause irreparable damage, loss and injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

<u>**COUNT IV**</u>
*(Dilution under § 417.061, R.S.Mo)*

74.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 73 of this Complaint.

75.    Plaintiff's Mark is valid at common law.

76.    Plaintiff's Mark is distinctive.

77.     Defendants' use of the Infringing Mark and publication and distribution of the Infringing Publication and associated websites have caused and continues to cause dilution of the distinctive quality of Plaintiff's Mark in violation of § 417.061, R.S.Mo.

78.     The aforesaid wrongful acts of Defendants have caused irreparable harm and injury to Plaintiff and, unless this Court enjoins and restrains Defendants from further use of the Mark, Plaintiff will continue to suffer irreparable injury from which it has no adequate remedy at law.

79.     As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and is suffering diminution in the value of, and injury to, the distinctiveness of Plaintiff's Mark, Plaintiff has been injured in its business and reputation, has been required to employ attorneys, and has otherwise been damaged in an amount not yet fully ascertained.

## COUNT V
### (Missouri Common Law Infringement)

80.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 79 of this Complaint.

81.     Plaintiff has used and exercised valid trademark rights in the distinctive Mark.

82.     The conduct of Defendants in using the Infringing Mark and publishing and distributing the Infringing Publication and the associated websites inside the State of Missouri and display thereof on its two websites accessible within the State of Missouri, among other things, is likely to cause confusion as to the source of the services and, therefore, constitutes trademark infringement under the common laws of the State of Missouri.

83.     The aforesaid wrongful acts of Defendants have caused irreparable harm and injury to Plaintiff and, unless this Court enjoins and restrains Defendant from further use of the Infringing Mark and publishing and distributing the Infringing Publications and the websites, Plaintiff will continue to suffer irreparable injury from which it has no adequate remedy at law.

84.     As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and is suffering diminution in the value of, and injury to, the distinctiveness of the Mark, has been injured in its business and reputation, has been required to employ attorneys, and has otherwise been damaged in an amount not yet fully ascertained.

## COUNT VI
### *(Missouri Common Law Unfair Competition)*

85.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 84 of this Complaint.

86.     Defendants' actions as alleged herein and use of the Infringing Mark violates Plaintiff's common law rights in and to the Plaintiff's Mark and constitutes unfair competition.

87.     The aforesaid wrongful acts of Defendants have caused irreparable harm and injury to Plaintiff and, unless this Court enjoins and restrains Defendant from further use of the Infringing Mark and publication and distribution of the Infringing Publication and the associated websites, Plaintiff will continue to suffer irreparable injury from which it has no adequate remedy at law.

88.     As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and is suffering diminution in the value of, and injury to, the distinctiveness of the Plaintiff's Mark, has been injured in its business and reputation, has been required to employ attorneys, and has otherwise been damaged in an amount not yet fully ascertained.

<u>COUNT VII</u>
*(Breach of Fiduciary Duty)*

89.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 88 of this Complaint.

90.     At all times relevant to Defendants' publication of "Out & About"® magazine and use of the Mark in connection therewith, Defendants were acting on behalf of, at the direction of and for the benefit of the Plaintiff.

91.     Defendants were agents for the principal, the Plaintiff, and Defendants owed fiduciary duties to Plaintiff to act in good faith and with care others in like position would exercise under the same or similar circumstances and to act solely in the best interests of Plaintiff.

92.     Plaintiff contracted and engaged Defendants to produce, publish, distribute and promote the "Out & About"® magazine using the Mark.

93.     Defendants' efforts included obtaining advertising for the exclusive use in the publication of the "Out & About"® magazine using the Mark.

94.     Defendants were required to account to and fully and fairly provide a portion of all advertising revenue from the "Out & About"® magazine, using the Mark, to Plaintiff.

95.     Defendants were required to use all advertisements obtained for the "Out & About"® magazine in said magazine.

96.     At all times relevant, Plaintiff approved and had editorial approval for the content of the "Out & About"® magazine using the Mark.

97.     Upon Defendants' wrongful termination of their agreement and refusal to publish the remaining 2014 issues of the "Out & About"® magazine, Defendants were obligated to cease and desist any use of the Mark or engaging in infringement by use of the Infringing Mark and/or the Infringing Publication and associated websites.

98.     The ownership of the Mark rests solely with the Plaintiff.

99.     Defendants breached their fiduciary duties owed to Plaintiff and acted illegally, oppressively and fraudulently and committed defalcations by withholding and failing to account for certain advertising revenue due to Plaintiff, by falsely claiming to currently be the publisher of the "Out & About"® magazine, by engaging in the infringing conduct alleged herein, including, without limitation, use of the Infringing Mark and publication and distribution of the Infringing Publication and associated websites, by placing advertisements in the Infringing Publication which were solely intended for placement in the "Out & About"® magazine, and by violating their duty of loyalty, honesty and good faith owed to Plaintiff.

100.    Further, Defendants should have known or did know that consumers and advertiser relationships developed under the arrangement between Plaintiff and Defendants were for Plaintiff's benefit and that Defendants ought not wrest advertisers and customers and advertisers away from Defendants.

101.    Defendants by using the Infringing Mark and publishing and distributing the Infringing Publication and the associated websites, usurped and took, without legal justification or excuse, the proprietary rights of Plaintiff and the rights of Plaintiff in the Mark.

102.    By engaging in the aforesaid breaches of fiduciary duties and defalcations, Defendants have proved themselves to be faithless agents.

103.    As a direct, foreseeable and proximate result of the breaches of fiduciary duties and defalcations of Defendants, Plaintiff has been damaged in an amount to be proved at trial, though not yet fully ascertained.

104.    The actions of Defendants alleged herein were willful, wanton, reckless, undertaken with an evil or selfish motive and/or were taken with reckless disregard for the rights

of Plaintiff and, therefore, an award of punitive damages to punish Defendants and/or deter Defendants and/or others from like conduct is appropriate and proper.

## COUNT VIII
### *(Breach of Contract; Accounting)*

105.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 104 of this Complaint.

106.    Plaintiff engaged Defendants to publish the "Chesterfield Magazine" in addition to the publication of the "Out & About"® magazine (the "Two Magazines").

107.    The parties entered into agreements by which Defendants would pay to the Chamber certain amounts earned from the publication of the Two Magazines.

108.    The parties entered into agreements by which Defendants would account to the Chamber for the advertising revenue from the publication of the Two Magazines, which included a "minimum" or floor amount for each of the Two Magazines.

109.    The Chamber has performed all conditions precedent required of them under the agreements for the publication of the Two Magazines.

110.    Defendants notified the Chamber that it would no longer publish the Two Magazines, despite Defendants' agreement to publish the remaining issues of same to and through the end of 2014.

111.    Defendants have failed and refused and continue to fail and refuse to account to and pay to the Chamber all amounts due and owing for the Two Magazines.

112.    As a foreseeable, direct and proximate result of the Defendants' breaches of the agreements for the Two Magazines, the Chamber has suffered and will continue suffer damages in the minimum amount of $19,900, subject to verification, audit and accounting for the actual amount due to the Chamber.

113.    The Chamber is entitled to prejudgment and post-judgment interest on the amounts due and owing from the Defendants, at the highest rate allowed law.

## OMNIBUS PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests and prays that the Court enter an Order granting the following relief and judgment in favor of Plaintiff and against Defendants, jointly and severally:

(a) For judgment that the Mark has been and continues to be infringed by Defendants;

(b) For judgment that the Mark has been and continues to be diluted by Defendants;

(c) A preliminary and permanent injunction against Defendants enjoining Defendants, their officers, agents, employees, and persons acting in concert with Defendants, from using the Infringing Mark and publishing, distributing or in any participating in the same concerning the Infringing Publication, or using any confusingly similar marks in any way or using any word, words, phrases, symbols, logos, or any combination of words or symbols that would create a likelihood of confusion, mistake, or deception therewith, including, without limitation, the Mark, in connection with the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing or developing of Defendants' business and services, including the Infringing Publication and websites;

(d) A preliminary and permanent injunction against Defendants enjoining Defendants, its officers, agents, employees, and persons acting in concert with Defendants, from using the Infringing Mark and/or engaging in further such unlawful acts and from reaping any additional commercial advantage from its misappropriation of the rights of Plaintiff in the Mark;

(e) A preliminary and permanent injunction against Defendants to recall from all of its officers, agents, employees, and all persons acting in concert with Defendants, any material containing the Infringing Mark and all the Infringing Publication in any way and any word, words, phrases, symbols, logos, any combination of words or symbols that would create a likelihood of confusion, mistake and/or deception therewith including, without limitation, the Infringing Mark, in connection with or in the marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing or developing of Defendants' business and services;

(f) Requiring Defendants to recover, recall and destroy, at its sole and exclusive cost, all materials in its possession or under its control that infringe the Mark including, but not limited to, all materials and/or references to the Infringing Mark and the Infringing Publication;

(g) Ordering that any mention or reference to the Mark, the Infringing Mark, and the Infringing Publication be removed from Defendants' websites;

(h) For all actual damages sustained by Plaintiff as the result of Defendants' acts of infringement and/or dilution, together with prejudgment interest thereon, according to proof, pursuant to 15 U.S.C. § 1117;

(i) For an accounting of the profits of Defendants resulting from its acts of infringement and/or dilution;

(j) For damages for breach of contract in the amount of at least $19,900, as subject to audit, review and/or accounting;

(k) For enhanced damages (treble damages) pursuant to 15 U.S.C. § 1117;

(l)  For an award of attorneys' fees pursuant to 15 U.S.C. § 1117 or as otherwise permitted by law;

(m) For Plaintiff's costs of suit, including their reasonable litigation expenses, pursuant to 15 U.S.C. § 1117;

(n)  For an award of compensatory damages suffered by Plaintiff according to proof;

(o)  For punitive damages in an amount that is fair and reasonable to punish Defendants and to deter others from similar or like conduct in the future concerning Defendants' breaches of fiduciary duties and defalcations;

(p)  For an award of punitive damages in amount sufficient to deter Defendants and punish Defendants, as may be permitted by law in 15 U.S.C. § 1117(a) or in the discretion of the Court;

(q)  For an award of interest on the compensatory damages at the highest rate allowed by law;

(r)  Requiring Defendants to file with this Court and to serve upon Plaintiff a report, in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of the Court's orders and injunction, pursuant to 15 U.S.C. § 1116; and

(s)  Granting Plaintiff such additional, other or further relief as the Court deems just and proper in the premises.

## RULE 38, FED. R. CIV. P. JURY TRIAL ENDORSEMENT AND DEMAND

**PURSUANT TO RULE 38 OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ANY AND ALL ISSUES TRIABLE BY RIGHT OF JURY IN THE ABOVE ACTION.**

Respectfully submitted,

/s/ Jeffrey B. Hunt
Jeffrey B. Hunt #33349MO
Andrew T. Drazen #59897MO
**DOSTERULLOM, LLC**
16090 Swingley Ridge Rd., Ste. 620
Chesterfield, Missouri 63017
(636) 532-0042 telephone
(636) 532-1082 facsimile
jhunt@dosterullom.com

**ATTORNEYS FOR PLAINTIFF
CHESTERFIELD CHAMBER OF
COMMERCE**

22